1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

TAIYANG FOODS INC.,

CASE NO. C10-0109JLR

11

Plaintiff,

12

v.

13

UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES,

14

Defendant.

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S CROSS MOTION
FOR SUMMARY JUDGMENT

15

## I.   INTRODUCTION

16
17
18
19
20
21
22

This is an Administrative Procedures Act ("APA") case arising out of the United

States Citizenship and Immigration Services' ("USCIS") decision denying Taiyang

Foods, Inc.'s ("Taiyang Foods") Immigration Petition for Alien Worker.  Before the

court is Taiyang Foods's motion for summary judgment (Dkt. # 12) and USCIS's cross-

motion for summary judgment (Dkt. # 13).  Having reviewed the papers filed in support

and opposition to the motions and the administrative record (Dkt. # 9), as well as heard

1    the arguments of counsel, the court DENIES Taiyang Foods's motion for summary

2    judgment (Dkt. # 12) and GRANTS USCIS's cross-motion for summary judgment (Dkt.

3    # 13).  The court DISMISSES the administrative appeal and affirms the October 22, 2009

4    decision issued by USCIS denying the petition.

5                    **II.    BACKGROUND AND ANALYSIS**

6    **A.    Factual Background**

7           Taiyang Foods is a Washington corporation located in Normandy Park,

8    Washington.  (Compl. (Dkt. # 1) ¶ 3).  It was established in August 2002 and has

9    approximately two employees.  On January 9, 2008, Taiyang Foods filed a petition with

10   USCIS to classify Min Soo Lee as a skilled worker under § 203(b)(3)(A)(i) of the

11   Immigration and Nationality Act, 8 U.S.C. § 1153(b)(3)(A)(i) (Form I-140).[1]  Min Soo

12   Lee is a Korean National from Pyoungtaek City, Korea.  (Admin. Rec. (Dkt. # 9) 3.)  He

13   is also the brother-in-law of the owner of Taiyang Foods.  (*Id.* at 6.)  Taiyang Foods

14   offered Mr. Lee employment as a Restaurant Manager with a wage of $1,000 per week,

15   or $52,000 per year.  (Admin. Rec. 6-7.)

16          In addition to the Form I-140, Taiyang Foods also provided USCIS with a copy of

17   a certified application for alien employment ("labor certification") on behalf of Min Soo

18   Lee that Taiyang Foods had filed with the Department of Labor on October 7, 2002.

19   (Admin. Rec. at 13.)  On August 17, 2005, the Secretary of Labor, pursuant to 8 U.S.C. §

20   1182(a)(5), granted the certification and certified that there are not sufficient workers

21

22          [1] A complete copy of Taiyang Foods's Form I-140 may be found in the Administrative
     Record at pages six and seven.

1  who are able, willing, qualified and available to be employed by Taiyang Foods as a

2  restaurant manager and that the employment of Min Soo Lee in that position would not

3  adversely affect the wages and working conditions of workers in the United States

4  similarly employed.  (Admin. Rec. at 13.)

5        On October 22, 2009, USCIS denied Taiyang Foods's immigration petition on

6  behalf of Mr. Lee.  After considering Taiyang Foods's income tax returns from years

7  2002-2006, Mr. Lee's W-2's for the years 2005-2007, and an analysis of Taiyang Foods's

8  net current assets, USCIS concluded that Taiyang Foods had not met its burden of

9  proving that it had the ability to pay Mr. Lee the proffered wage at the time of the priority

10  date, October 7, 2002, and continuing into the present as required by 8 C.F.R. §

11  204.5(g)(2).  USCIS painted the following financial picture of Taiyang Foods during the

12  relevant period:

| Year | Lee's W-2 Wages | Taiyang Foods's Ordinary Income | Taiyang Foods's Net Current Assets |
|---|---|---|---|
| 2002 | | $-13,314 | $-17.00 |
| 2003 | | $29,185 | $1,081 |
| 2004 | | $45,896 | $-5,606 |
| 2005 | $52,000 | $18,565 | $3,399 |
| 2006 | $51,000 | $51,227 | $3,072 |
| 2007 | $52,000 | | |

      This appeal followed.

**B.   Standard of Review**

      Under the APA, a court must set aside an agency decision if it is "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. §

706(2)(A).  Review under the APA is deferential and a court must not "substitute its

1    judgment for that of the agency." *Motor Vehicle Mfr. Ass'n v. State Farm Mut. Auto. Ins.*

2    *Co.*, 463 U.S. 29, 43 (1983).  Judicial review is limited to the administrative record that

3    was before the agency at the time of its decision.  *Citizens to Preserve Overton Park, Inc.*

4    *v. Volpe*, 401 U.S. 402, 419-20 (1971).  Based on the record before it, an agency is

5    required to "articulate a satisfactory explanation for its action including a rational

6    connection between the facts found and the choice made." *Motor Vehicle Mfr. Ass'n*,

7    463 U.S. at 43 (internal quotation omitted).  Moreover, a court must give an agency's

8    interpretation of its own regulations "controlling weight unless it is plainly erroneous or

9    inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512,

10   (1994) (internal quotation omitted).

11   **C.    Statutory Framework**

12          The Immigration and Nationality Act governs the issuance of visas to aliens

13   seeking admission to the United States after receiving permanent job offers as skilled or

14   professional workers.  8 U.S.C. § 1153(b)(3)(A).  Authority to administer this statute has

15   been delegated to the Secretary of Homeland Security and sub-delegated to the USCIS.

16   *See* 8 U.S.C. § 1103(a)(1); 8 C.F.R. § 2.1.

17          Before obtaining a visa for permanent employment, an alien's prospective

18   employer must obtain a certification from the Department of Labor stating that there are

19   no qualified, able, and willing United States workers who can fill the position.  8 U.S.C. §

20   1182(a)(5)(A)(i)(I).  This certification is obtained by filing and gaining approval of a

21

22

1    Form ETA-750.  20 C.F.R. § 656.21(a) (2002).[2]  The date the Form ETA-750 is approved

2    is the "priority date" used by USCIS in evaluating the Form I-140 petition.

3          Once an employer obtains Department of Labor's approval of a Form ETA-750,

4    the employer can petition the USCIS to classify a specific alien beneficiary as an

5    employment-based immigrant using a Form I-140.  *See* 8 C.F.R. § 204.5(c).  An

6    employer bears the burden of showing that the job offer to the beneficiary is a realistic

7    one.  Thus, the employer must show that the prospective employee meets the minimum

8    job requirements specified in the Form ETA-750, 8 C.F.R. § 204.5( l)(3)(ii), and that the

9    employer has the ability to pay the wage specified in the Form ETA-750, 8 C.F.R. §

10   204.5(g)(2).  Section 204.5(g)(2) provides:

11         Any petition filed by or for an employment-based immigrant which
           requires an offer of employment must be accompanied by evidence that the
12         prospective United States employer has the ability to pay the proffered
           wage.  The petitioner must demonstrate this ability at the time the *priority*
13         *date* is established and continuing until the beneficiary obtains lawful
           permanent residence.  Evidence of this ability shall be either in the form of
14         copies of annual reports, federal tax returns, or audited financial statements.
           . . .   In appropriate cases, additional evidence, such as profit/loss
15         statements, bank account records, or personnel records, may be submitted
           by the petitioner or requested by the Service.
16
17   (*Id.* (emphasis added).)  An employer must demonstrate the ability to pay the proffered

18   wage beginning at the time the ETA-750 was approved and continuing until the petition

     to hire an alien is approved.  8 C.F.R. § 204.5(g)(2).
19

20   _____

21       [2] After the labor certification was issued in this case, the Department of Labor instituted a
     new labor certification program using Form ETA-9089.  *See* 20 C.F.R. § 656.17(a).  Because
22   Taiyang Foods's labor certification utilized Form ETA-750, the court will refer to the pre-2005
     version of the process found at 20 C.F.R. § 656.21(a).

**D.      Analysis**

The sole issue before the court is whether USCIS erred in finding that Taiyang Foods could not demonstrate an ability to pay.  In its complaint, Taiyang Foods claims that the USCIS's decision was arbitrary and capricious because it failed (1) to account for a loan from Taiyang Foods to its sole shareholder that was payable on demand; (2) to conclude that loans to shareholders can be counted as current assets of the corporation; and (3) to find that this particular loan was payable on demand and thus should have been considered a current asset.  (Compl. ¶¶ 15-17.)  In its motion for summary judgment, Taiyang Foods also argues that the USCIS committed error by failing to follow the reasoning in *In re matter of Sonegawa*, which allowed a Form I-140 petition wherein the employer had not established that it had the financial ability to pay the beneficiary.  (*See generally* Mot. at 12-16.)  The court takes the latter issue first as this is Taiyang Foods's focal argument in its motion.

1.   <u>*In re matter of Sonegawa*</u>

In 1967, the Board of Immigration Appeals ("the Board") held that even if an employer cannot establish the ability to pay the proffered wage at all times since approval of the ETA-750, the employer can still gain approval of its immigration petition by establishing a reasonable expectation of future profits sufficient to pay the proffered wage based on a totality of the circumstances.  *See In re matter of Sonegawa*, 12 I. & N. Dec. 612 (BIA 1967).  In *Sonegawa*, the employer's petition to hire an alien worker was denied because its net income in 1966 ($280) was less than the proffered wage of $6,240 per year.  The employer in that case, Kow Kaneko, was a dress-maker of exceptional

1   stature in the Pasadena, California area.  The denial was reversed by the Board after a

2   fact-specific analysis of Ms. Kaneko's financial condition.  The Board first noted that the

3   small profit in 1966 was due to unique conditions that were not likely to be repeated.  In

4   1966, Ms. Kaneko changed locations and was required to pay double rent for five months

5   and was unable to conduct any business for a period of time while the actual move took

6   place.  *Sonegawa*, 12 I. & N. Dec. at 614.  In the following year, her business rebounded

7   and showed a net profit of $4,774 for the first five months of 1967.  *Id*.  The Board also

8   noted that Ms. Kaneko enjoyed a national reputation as a dress-maker as evidenced by

9   articles published in popular magazines such as *Time* and *Look* magazines.  *Id*. at 615.

10  Based on this evidence, the Board found that Ms. Kaneko's "expectations of continued

11  increase in business and increasing profits are reasonable expectations and that it has

12  been established that she has the ability to pay the beneficiary the stipulated wages."  *Id.*

13         Although the facts of *Sonegawa* are unique and it appears to be an outlier opinion,

14  the court can garner at least the basic principle that an employer who has experienced and

15  recovered from an isolated period of economic duress can rely on its renewed

16  profitability in demonstrating its ability to pay a proffered wage.  While Taiyang Foods

17  argues that the reasoning in *Sonegawa* is applicable to his case, the court cannot find

18  support for it in the record—and, as even Taiyang Foods acknowledges, *Sonegawa* is a

19  much different case.  In *Sonegawa*, Ms. Kaneko had one justifiable bad year in 1966, but

20  by that point her shop had been open for 10 years and by the first half of 1967 it appeared

21  that Ms. Kaneko had made a full financial recovery.  Here, Taiyang Foods filed its

22  petition with the Department of Labor to employ Mr. Lee just after two months of being

1   in business.  It had not established a solid reputation in the community nor has it

2   established its continued viability.  More importantly, during the first year in business,

3   Taiyang Foods did not have an ability to pay Mr. Lee the proffered wages.  Unfortunately

4   for Mr. Lee, Taiyang Foods immediately filed its request for labor certification for him in

5   its first year in business, which became the priority date used by USCIS to determine

6   financial ability for the immigration petition.  As reflected in the administrative record,

7   Taiyang Foods's inability to show financial ability during this period was fatal to its

8   petition.  The fact that USCIS declined to make an exception for Taiyang Foods, as it did

9   35-years ago for Ms. Kaneko, does not change the outcome and does not evidence an

10  abuse of the agency's discretion.

11  2.  Shareholder Loan

12      As discussed above, Taiyang Foods also argues that USCIS acted arbitrarily and

13  capriciously by failing to consider loans made by the corporation to its sole shareholder,

14  Gwang S. Shin, as a net current asset in 2003 and 2004 totaling more than $70,000.

15  USCIS responds that even if it had considered the loans as assets in 2003 and 2004,

16  Taiyang Foods's claim would still fail because, as even Taiyang Foods concedes, it could

17  not establish an ability to pay the proffered wage in 2002.

18      Even if Taiyang Foods had established an ability to pay in 2002, however, USCIS

19  would not have considered the loans to Mr. Shin because (1) they were not evidenced by

20  any formal documents; (2) there was no evidence, other than Mr. Shin's own statements,

21  that the loans were payable on demand—which would be required for the loans to be

22  considered a current asset; and (3) there was no evidence that if Taiyang Foods called the

1  loans, Mr. Shin would have the ability to pay them.  Based on the arguments set forth by

2  USCIS, the court cannot find that it abused its discretion by failing to consider Taiyang

3  Foods's loans to Mr. Shin.

4                                           III.      CONCLUSION

5          Based on a review of the record, there is nothing to suggest that USCIS's decision

6  was arbitrary and capricious.  The court therefore DENIES Taiyang Foods's motion for

7  summary judgment (Dkt. # 12) and GRANTS USCIS's cross-motion for summary

8  judgment (Dkt. # 13).  The court DISMISSES the administrative appeal and affirms the

9  October 22, 2009 decision issued by USCIS denying the petition.

10         Dated this 17th day of September 2010.

11

12

13         _____

14         JAMES L. ROBART
           United States District Judge

15

16

17

18

19

20

21

22